IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 5, 2012

## WILLIE THOMAS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-01487     Lee V. Coffee, Judge**

**No. W2011-01795-CCA-R3-PC  - Filed November 6, 2012**

Petitioner, Willie Thomas, appeals the dismissal of his petition for post-conviction relief in which he alleged that his guilty plea was unknowingly and involuntarily entered due to the ineffective assistance of trial counsel.  More specifically he contends that (1) trial counsel "scared" him into pleading guilty; and (2) he was not fully informed regarding the plea. After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Willie Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Background

A Shelby County Grand Jury returned an indictment against Petitioner charging him with first degree premeditated murder.  Petitioner subsequently entered a plea of guilty to second degree murder with an agreed sentence of eighteen years at 100% release eligibility to be served in the Department of Correction.

The following facts were set forth by the State at the guilty plea submission hearing:

The facts giving rise to the indictment is that on September 1st, 2008, at approximately 6[:00] p.m., police officers were called to 2120 Clarksdale here in Shelby County, Tennessee. Upon arrival, officers observed [Petitioner] in the backyard of 2120 Clarksdale holding a .22 caliber rifle. [Petitioner] was taken into custody without incident. They observed that his wife Jacqueline Thomas had been shot one time and was lying in the dining room floor of the house. She was transported to the Regional Medical Center where she later died. The medical examiner's office determined that she died from a gunshot wound and ruled her death a homicide.

It was learned that [Petitioner] and Jacqueline Thomas were arguing just prior to the shooting. During the verbal altercation, [Petitioner] went and retrieved a .22-caliber rifle, pointed it at Jacqueline Thomas and he shot her. The witnesses, the people who were in the house, were her - - Jacqueline Thomas' brother, a Darrell Smith, which we believe was the subject of the argument and her two grandchildren who are both teenagers. That would be the proof that would be presented to the Court.

There is also several members of his neighborhood that are here as well and that the State has talked to. And in regards to that, we feel it is an intentional killing, but we would have problems proving premeditation.

Petitioner filed a timely petition for post-conviction relief that was denied by the trial court.

## II. Post-Conviction Hearing

Trial counsel testified he was retained to represent Petitioner on his first degree murder charge. He had a "good working relationship" with Petitioner and his family, and Petitioner's family was very helpful in communicating with him and helping him locate witnesses. Trial counsel did not tell Petitioner the case would probably be settled for a guilty plea to criminally negligent homicide, and they discussed all of the possibilities. He said they would have discussed the ranges of punishment and the lesser-included offenses. Trial counsel testified he investigated everything himself and spoke with all potential witnesses. He then filed a number of pre-trial motions and had Petitioner evaluated by West Tennessee Forensics, Inc. Trial counsel testified that Petitioner's defense was that the shooting was accidental. In fact, Petitioner intended to point the gun at his wife's brother and chase him out of the home. However, the defense was inconsistent with witnesses' statements, including that of Petitioner's grandchildren.

Trial counsel testified Petitioner entered a guilty plea on December 2, 2009. During the plea colloquy, Petitioner had some questions concerning one-hundred percent service of the sentence. As a result of the questions, there was a recess, and trial counsel spoke with Petitioner again "to make sure that he had any and all questions answered." He did not recall Petitioner asking the trial court if it was too late to change his mind about the plea. Trial counsel testified the trial court made certain Petitioner understood his "sentence was at a hundred percent; and whatever release eligibility was not part of the plea - that was not something that anyone would assure him." Trial counsel further said:

> What was also discussed was that, I think if any percentage was discussed, it was eight-five percent - either [the State] or the court might have said that it is true that even on a hundred-year sentence - I mean a hundred-year - a hundred-percent sentence, there still may be some eligibility after eighty-five percent of it was complete. That's the only discussion I remember having about that.

Trial counsel felt Petitioner understood the percentage of his sentence to be served and the consequences of his plea.

On cross-examination, trial counsel testified that during the plea colloquy, the trial court allowed him to clear up any misunderstanding regarding the percentage of the sentence to be served. Concerning his conversation with Petitioner, trial counsel said:

> I mean the conversation was very straight forward. It was basically a regurgitation of what we talked about on the stand in that he doesn't have to enter this plea; but that if he does, it will be marked as a violent offense, and it will be a hundred percent. And, in fact, when I readdressed the court and telling the court that I'd spoken with him and that he would like to come back up on the stand, I even say, "I feel like I answered his questions. He has an understanding that the sentence is an eighteen-year sentence and the judgment sheet is marked at a hundred percent; and I think he still wants to go forward with his plea; so if I could" - and we brought his back around.

The trial court then went back through and voir-dired Petitioner again to make sure he understood. Petitioner then told the court he was freely entering his plea, and no one was forcing him to plead guilty.

Petitioner testified that trial counsel met with him "maybe three times," and he gave trial counsel names of all his witnesses. Trial counsel said he spoke with all the witnesses. Concerning the offense, Petitioner testified that he and the victim had an argument because

her brother, who was a "crack cocaine addict" was living with them. He said during the argument, his brother-in-law grabbed a chair and "slammed" him into the next room where the rifle was located. Petitioner testified he then took the rifle and the victim grabbed it as he walked by, and the gun went off, and she was struck by the bullet.

Petitioner testified trial counsel told him he would be convicted of first degree murder if the case went to trial, and he would receive sixty-one years. He said trial counsel had initially told him that he would not accept anything less than "negligent homicide with time served" because the shooting was an accident. Petitioner testified he learned of the State's plea offer on the day of trial, and trial counsel told him that he "could get anywhere from sixty percent to seventy percent." He said when the trial court told him that he would serve one-hundred percent, trial counsel said, "The judge have [sic] to say it like that, you know, for his record." Petitioner testified trial counsel also said the trial court "really don't mean it like that." He said trial counsel then "wrote it all down - forty percent - sixty-percent - he said, 'This is what really will happen, right here.'"

Petitioner testified trial counsel scared and coerced him into pleading guilty by telling him that he would serve sixty-one years if the case went to trial. Petitioner agreed that during the guilty plea submission hearing, he told the trial court he was satisfied with trial counsel's representation, and he understood he was pleading guilty to eighteen years "at a hundred percent, which really calculates possibly to eighty-five percent before you're release eligible[.]" Petitioner claimed he agreed to what the trial court said because trial counsel told him "the judge have [sic] to say it like that."

On cross-examination, Petitioner insisted that he did not believe he would have been convicted of first degree murder if the case had gone to trial. He agreed that he would have served more than eighteen years if he had been convicted as charged. Petitioner admitted he had the opportunity to change his mind about going to trial, but he claimed trial counsel scared him into pleading guilty. He never told the trial court that trial counsel was scaring him because he had "faith" in trial counsel. Petitioner testified he did not understand everything the trial court reviewed with him at the guilty plea submission hearing. However, Petitioner admitted he took the eighteen-year offer freely, and he told the trial court he voluntarily accepted the offer. He also told the trial court no one forced him to plead guilty, and he and the "Good Lord above made that decision." Petitioner testified he told the trial court that he had received "[v]ery good representation" from trial counsel, and he said, "I've just got to face the facts that I've got to get this over with." Petitioner said that eighteen years sounded better than sixty-one years, and he accepted the plea offer "because [his] grand kids, they was gonna use them as witnesses; and whatever they said, somebody else had to tell them because they wasn't there." Petitioner claimed that no one, other than him and the victim, were in the house when the victim was killed.

-4-

## III. Standard of Review

In a claim for post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, . . . thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) the deficient performance was prejudicial. *See Powers v. State,* 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently

made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland*, a Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Petitioner contends trial counsel "scared" him into pleading guilty, and he was not fully informed regarding his plea. Concerning Petitioner's guilty plea, the post-conviction court set forth in its order denying post-conviction relief:

> The lengthy and extensive colloquy between the Petitioner and the trial court at the plea submission hearing indicates that the trial court asked the Petitioner if the plea was freely and voluntarily made; if he had been informed of the elements of the crime, burden of proof, and defenses. The trial court questioned the petitioner to ensure that the petitioner understood: (1) the nature of the charges against him; (2) that by pleading guilty he was giving up the right to a trial by jury; (3) that by pleading guilty he was giving up the right to the right to confront witnesses; and (4) that by pleading guilty he was giving up the right to [not be subject to] self-incrimination.

> In other words the trial court satisfied the requirements of *Boykin v. Alabama*, 395 U.S. 238 (1969). Moreover, the petitioner had plead guilty in the past and presumably was aware of his options even before this colloquy (see attached bond report). The petitioner had failed to prove that his guilty plea was not knowing or voluntary. This issue is without merit.

> A review of the transcript of the plea hearing reflects that the trial court thoroughly reviewed and explained the petitioner his rights, the offenses to which he was pleading guilty, and the sentence which he was receiving. The Petitioner repeatedly assured the trial court that he understood his rights and the consequences of his guilty plea.

The trial court further found Petitioner's testimony at the post-conviction hearing was contradictory with his testimony at the guilty plea submission hearing, and the court pointed out all of the discrepancies between the two hearings. The post-conviction court said

Petitioner's statements at the post-conviction hearing were not credible, and the court resolved "all credibility issues against the petitioner." At the post-conviction hearing, the post-conviction court specifically said that it accredited trial counsel's testimony. The record in this case does not preponderate against the trial court's findings.

At the guilty plea submission hearing, Petitioner initially informed the trial court that he did not agree to serve his eighteen year sentence for second degree murder at one-hundred percent, and he thought the sentence would be served at "about 60 percent or 70 percent or maybe even less." He also asked if it was too late to change his mind, and the trial court informed him that he could change his mind. The State pointed out that according to the law, Petitioner would become eligible for parole after eighty-five percent of the sentence was served. The trial court asked Petitioner to step down from the witness stand, and he spoke with trial counsel about the matter.

Petitioner then returned to the courtroom and trial counsel announced he had answered Petitioner's questions, and Petitioner had an understanding that "the sentence is an 18-year sentence and the judgment sheet is marked at 100 percent." Petitioner resumed the witness stand, admitted he committed the murder, and said he wanted to plead guilty to the offense. Petitioner told the trial court that trial counsel reviewed and explained everything to him, and he "pretty much" understood everything. The trial court then reviewed all of Petitioner's rights with him, and Petitioner said that he understood them. Petitioner told the trial court that he gave up all of his rights and that he was entering the plea freely and voluntarily. Petitioner specifically said, "I'm ready to get it over with." Petitioner testified that no one was forcing him or "twisting [his] arm," and he and the "good Lord above made that decision." He also said he was satisfied with trial counsel's representation and that it was "[v]ery good representation." The trial court again reviewed the plea agreement with petitioner and told him that his release eligibility on the eighteen-year sentence was one-hundred percent. The trial court further informed Petitioner that he was charged with first degree murder and was facing a life sentence, which gave him the possibility of parole in fifty-one years if convicted.

Trial counsel testified that during the plea colloquy, the trial court allowed him to clear up any misunderstanding regarding the percentage of the sentence to be served. He said when Petitioner left the witness stand, they had a "very straight forward conversation." Trial counsel testified, "It was basically a regurgitation of what we talked about on the stand in that he doesn't have to enter this plea; but that if he does, it will be marked as a violent offense, and it will be a hundred percent." At the post-conviction hearing, Petitioner admitted he never told the trial court that trial counsel had coerced or scared him into pleading guilty, and he said "eighteen years sound[s] a lot better than sixty-one years." He also said he pled guilty

because his grandchildren were "going through a whole lot," and he did not want them to have to testify at trial.

Based on the record, we conclude that Petitioner has failed to show by clear and convincing evidence that his guilty plea was involuntarily or unknowingly entered, that he received ineffective assistance of counsel or that he was prejudiced by any alleged ineffective assistance of counsel. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE